IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOAN E. MORRIS-BELCHER, TIFFANY C. McCRAVEY, RISHA HAMLIN, and CHANDRA SHERRILL,<br><br>      Plaintiffs,<br><br>    v.<br><br>HOUSING AUTHORITY OF THE CITY OF WINSTON-SALEM,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   1:04CV255<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on a Motion for Summary Judgment [Document #26] by the Defendant Housing Authority of the City of Winston-Salem ("Defendant" or "Housing Authority"). Also before the Court is a Motion by Plaintiffs Joan E. Morris-Belcher, Tiffany C. McCravey, Risha Hamlin, and Chandra Sherrill (collectively "Plaintiffs") for Leave to File a Response Out of Time [Document #31], and a corresponding Motion by Defendant seeking to strike Plaintiffs' untimely Response [Document #37].

Plaintiffs are all former employees of the Housing Authority and have brought this lawsuit pursuant to 42 U.S.C. § 2000e-5(f) for employment discrimination on the basis of sex. For the reasons discussed below, the Court finds that Plaintiffs have failed to establish excusable neglect as required by Federal Rule of Civil Procedure 6(b)(2) and Local Rule 6.1(a), and therefore Plaintiffs' Motion for Leave to File a Response Out of Time will be DENIED. Defendant's corresponding Motion to Strike the Untimely Response [Document #37] will therefore be GRANTED.

The Court further finds that Plaintiffs have failed to establish a prima facie case of

discrimination, and the Court concludes that there are no genuine issues of material fact precluding summary judgment in this case. Therefore, Defendant's Motion for Summary Judgment [Document #26] will be GRANTED.

I. FACTUAL BACKGROUND[1]

In April 2003, Plaintiffs were each employed as case managers with the Housing Authority. As case managers, Plaintiffs had a fair degree of autonomy in scheduling appointments and making visits to client's homes. On April 23, 2003, Plaintiffs left work at approximately 12:30 p.m. for lunch together at the Fire Mountain Restaurant in Kernersville, North Carolina. Plaintiffs admit that they spent over two hours at lunch together that day and that they stayed at lunch until after 3:00 p.m. While at lunch, an individual eating in the restaurant, Mr. Thomas Penn, ("Mr. Penn") overhead the Plaintiffs' conversations involving rumors and derogatory statements regarding their co-workers, supervisors, and managers at the Housing Authority. During the lunch, Plaintiffs made jokes regarding one of the managers, calling her "Shrek" and "Big Foot" because they believed she was overweight. Plaintiffs also made jokes about other supervisors' birthmarks and scars, calling one of the supervisors "Elephant Man" and another "Scarface." Plaintiffs joked that one of the supervisors was "incompetent." Plaintiffs discussed their belief that their supervisor, Ms. Rosalind McClelland, was sexually involved with Mr. Reid Lawrence, the Executive Director of the Housing Authority. According to Mr. Penn, and to Plaintiffs' own admissions in their depositions, Plaintiffs opined that Ms. McClelland was "sleeping around" for promotions and that Mr. Lawrence was

---

[1] Plaintiffs did not file a timely Response to the Motion to Dismiss, and the Court in this Opinion denies Plaintiffs' Motion for Leave to File a Response Out of Time and grants Defendant's Motion to Strike the Untimely Response. Therefore, in evaluating the Motion for Summary Judgment, the Court has summarized the uncontested facts based on the evidence before the Court included with Defendant's Motion for Summary Judgment.

"screwing everybody." Plaintiffs also opined that there were "whores" within the Housing Authority from top to bottom. Plaintiffs then agreed that if anyone questioned them regarding their extended lunch break, they could falsely report that they were conducting home visits with Housing Authority residents during the time when they were actually at lunch. Mr. Penn observed the individuals depart at approximately 3:40 p.m.

Mr. Penn was acquainted with some of the individuals mentioned by the Plaintiffs during lunch, and decided to call Ms. McClelland at the Housing Authority to report what he had heard. At a staff meeting later that week, Plaintiffs were reminded of Housing Authority lunch policies. Plaintiffs were then individually confronted with the report from Mr. Penn. Each Plaintiff admitted having the conversations and violating the one-hour lunch policy. Nevertheless, Plaintiffs subsequently submitted timesheets claiming to have worked eight hours on the day in question, with only a one-hour lunch.[2] Based on Plaintiffs conduct and comments at the lunch, their violation of the one-hour lunch policy, and their falsification of their time records, Plaintiffs were terminated. In their depositions, Plaintiffs admit making these comments, admit violating the one-hour lunch policy, and admit that their terminations were based on the April 23, 2003 lunch. See Morris-Belcher Depo. Vol. I, pp. 43-50, 53, 81-82; Sherrill Depo. Vol. I, pp. 22, 37-41, 71-72, Vol. II, pp. 19-20; McCravey Depo. Vol. I, pp. 23, 27-28, 30, 34, 36, 38, 44-46, 57, 62, 79, 92-95; Hamlin Depo. Vol. I, pp. 47, 51-52, 55-57, 83-84.

---

[2] Two of the Plaintiffs later contended that they were entitled to "compensatory time," so that the indication of eight hours of work on April 23 was not incorrect. However, none of the Plaintiffs obtained prior authorization or submitted any required documentation for using compensatory time, as required by Housing Authority policy. In addition, there is no dispute that Plaintiffs took an extended lunch without obtaining prior approval. There is also no dispute that Plaintiffs engaged in the unprofessional public name-calling and gossiping about their supervisors during the lunch.

After being terminated, Plaintiffs filed an EEOC charge and subsequently filed the present lawsuit. In their Complaint, Plaintiffs allege that they were subjected to sexual harassment, were passed up for promotions because promotions and job benefits were based on sexual favoritism, and were terminated based on conduct that would not have been cause for dismissal if they had been male.

On June 29, 2004, the parties submitted a Joint Rule 26(f) Report that provided for a discovery period to run from June 29, 2004 until January 29, 2005. Based on the parties' plan, the Court set the case for trial on the July 11, 2005 calendar, which provided ample time for the parties to present their dispositive motions. On January 26, 2005, the parties requested an extension of the discovery deadline, prompted primarily by Plaintiffs' failure to answer discovery and appear for depositions. Magistrate Judge Dixon denied that request because the extension of the discovery period would not allow sufficient time for dispositive motions. However, the parties subsequently agreed to shorten their deadlines for dispositive motions in order to allow some extension of the discovery deadline. Based on this agreement, Magistrate Judge Dixon entered a Scheduling Order on February 23, 2005 extending the close of discovery until March 21, 2005, and providing that "summary judgment motions are due no later than March 31" and "[m]otion responses are due no later than April 11." The Scheduling Order further provided that "[t]hese dates are firm."

Defendant subsequently filed Motions to Compel and for Sanctions based on Plaintiffs' failure to respond to discovery deadlines, failure to provide requested documents, and failure to appear for scheduled depositions. Magistrate Judge Dixon held a hearing on May 18, 2005, and granted Defendant's Motion for Sanctions based on Plaintiffs' multiple discovery abuses. In his May 26, 2005 Order imposing sanctions, the Magistrate Judge found that "Plaintiffs missed their

4

discovery deadlines repeatedly" and "Defendant has been substantially prejudiced by Plaintiffs' repeated failure to produce timely and thorough discovery responses and by Plaintiffs' unexplained failure to appear for or complete reconvened depositions." The Magistrate Judge further concluded that "Plaintiffs' failure to produce discovery responses has foreclosed Defendant's ability to complete Plaintiffs' depositions and to adequately prepare for trial." Based on the scheduled trial date and the fact that the discovery deadline expired three months prior, the Magistrate Judge concluded that "future disclosure of responsive discovery material by Plaintiffs is not a suitable remedy and would further prejudice Defendant." Based on these findings, the Magistrate Judge ordered Plaintiffs to pay Defendant's expenses and attorney's fees related to the Motion for Sanctions and the depositions for which Plaintiffs failed to appear. The Magistrate Judge further recommended that this Court strike the pleadings of Plaintiffs Morris-Belcher, McCravey, Hamlin, and Sherrill for damages for emotional pain, suffering, or mental anguish, and strike the pleadings by Plaintiff Sherrill for loss of income, compensatory damages and backpay based on Plaintiffs' failure to provide timely and complete discovery on these issues. In a subsequent Order, the Magistrate Judge also recommended that Plaintiff McCravey's claims for loss of income, compensatory damages and backpay be stricken based on Plaintiff McCravey's failure to produce requested information relevant to these claims.

On March 31, 2005, within the time specified by the Scheduling Order, Defendant filed the present Motion for Summary Judgment. Plaintiffs did not file a Response to the Motion for Summary Judgment by the April 11 deadline specified in the Court's Scheduling Order. Over five weeks later, on May 20, 2005, Plaintiffs filed a Motion for Leave to File a Response Out of Time, and included a proposed Response and Affidavits. Defendant subsequently filed a Motion to Strike

5

the Untimely Response [Document #37]. Plaintiffs' Motion for Leave to File a Response Out of Time, Defendant's Motion to Strike, and Defendant's Motion for Summary Judgment are all ripe for disposition. Therefore, in evaluating these motions, the Court will first consider Plaintiffs' Motion for Leave to File their Response Out of Time and Defendant's corresponding Motion to Strike the Untimely Response, and the Court will then consider Defendant's Motion for Summary Judgment.

II. PLAINTIFFS' MOTION FOR LEAVE TO FILE RESPONSE OUT OF TIME AND DEFENDANT'S CORRESPONDING MOTION TO STRIKE THE RESPONSE

Pursuant to Federal Rule of Civil Procedure 6(b), "[w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order." Fed. R. Civ. P. 6(b). However, if a motion is made "after the expiration of the specified period," the Court may "permit the act to be done where the failure to act was the result of excusable neglect." Id. Likewise, Local Rule 6.1 provides that "[e]xtensions will not be allowed unless the motion is made before the expiration of the specified time, except upon a showing of excusable neglect." Local Rule 7.3(k) similarly provides that "[t]he failure to file a brief or response within the time specified in this rule shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect."

Thus, although motions for enlargement of time made before the proscribed period's expiration require only a showing of "cause," where a party waits until after the expiration, "the burden is a more rigorous 'excusable neglect' standard." Curtis v. Norfolk S. Ry. Co., 206 F.R.D. 548, 550 (M.D.N.C. 2002). In deciding whether an omission is excusable, "the determination is . . .

6

an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74 (1993). The relevant circumstances include: "[1] the danger of prejudice to the [adverse party] . . . [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." Id. Whether an omission is excusable is left to the "sound discretion of the district court." Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984).

In the present case, Plaintiffs failed to file a timely Response and did not request an extension of time until five weeks after the expiration of the time set by the Court's Scheduling Order in this case. Therefore, under Federal Rule of Civil Procedure 6(b) and Local Rule 7.3(k), Plaintiffs waived their right to respond unless they can establish "excusable neglect." In support of Plaintiffs' Motion for Leave to File Out of Time, Plaintiffs' counsel submits that he has been handling other unrelated cases for a disbarred attorney, and that this caseload, coupled with his regular practice and a staff shortage, caused the delay in responding in this matter. Plaintiffs' counsel also contends that "[t]his case, with multiple plaintiffs and several boxes of documents, produced challenges attending to detail."

In evaluating this motion, the Court notes first that Plaintiffs failed to comply with an explicit deadline that was set forth by Magistrate Judge Dixon in his Scheduling Order that he specifically described as being "firm." The Magistrate Judge was initially unwilling to extend the discovery period at the parties' request, based on his concern that such an extension could result in deadlines for dispositive motions that were too close to the trial date. In order to alleviate this concern, the parties voluntarily agreed to shorten the deadlines for dispositive motions. Based on

7

this agreement, the Magistrate Judge's Scheduling Order specifically announced the applicable deadlines, including a due date for Responses of April 11, 2005. Plaintiffs, however, did not file the present motion until May 20, 2005, some thirty-nine days beyond the deadline. Plaintiffs' counsel has been handling this case since its inception, and should have been well aware of the applicable deadlines. In these circumstances, the Court has a significant interest in holding the parties to the agreed-upon deadlines embodied in a Court Order, particularly where the parties represented to the Court that they would comply with those deadlines in order to obtain an extension of the discovery period.

In addition, the Court also notes Plaintiffs' demonstrated pattern of failing to comply with required deadlines in this case, including their failure to answer discovery and to appear for depositions. Plaintiffs' failure to comply with the discovery deadlines ultimately led the Magistrate Judge to impose sanctions and recommend dismissal of certain claims. Thus, Plaintiffs' actions throughout this litigation have demonstrated a disregard of Court-ordered deadlines that resulted in unnecessary delays and prejudice to the Defendant.

Moreover, the Court notes that the professional commitments and busy caseload of an attorney are not ordinarily grounds for finding excusable neglect. See, e.g., Pioneer, 507 U.S. at 398, 113 S. Ct. at 1499 ("[W]e give little weight to the fact that counsel was experiencing upheaval in his law practice at the time."); McLaughlin v. City of LaGrange, 662 F.2d 1385, 1387 (11th Cir. 1981) ("The fact that counsel has a busy practice does not establish 'excusable neglect' under Rule 6(b)(2)."); cf. Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 533-34 (4th Cir. 1996) (noting that "it was appropriate to hold a client accountable for the mistakes of counsel" and that "[t]he most important of the factors identified in Pioneer for determining whether 'neglect' is

8

'excusable' is the reason for the failure to file"). The fact that Plaintiffs' counsel has a busy caseload and that this case involved four plaintiffs and "several boxes of documents" does not establish excusable neglect. Moreover, even if Plaintiffs' counsel was too overextended to file a substantive response to the Housing Authority's motion for summary judgment, no reasonable explanation has been given to explain why Plaintiffs did not request an extension of time prior to the expiration of the response period on April 11, 2005.

Finally, the Court notes that allowing Plaintiffs' untimely Response would cause significant prejudice to Defendant and would unduly delay this Court's trial calendar. While Defendant had only 10 days to prepare their Motion for Summary Judgment, Plaintiffs have now taken over 7 weeks to prepare their Response. In addition, Defendant is now faced with the prospect of drafting a Reply and evaluating Plaintiffs' Response only a few weeks before trial and a few days before pretrial disclosures are due. To allow Plaintiffs to now file a Response on the eve of trial, long after the discovery period has closed and the deadlines have passed, would result in significant prejudice to Defendant. Moreover, the additional time required for Defendant's Reply and the Court's subsequent consideration of Defendant's Motion for Summary Judgment would unduly delay this Court's trial schedule.

Therefore, after a consideration of all of these factors as discussed above, the Court concludes that Plaintiffs have failed to show excusable neglect. The Court in its discretion therefore concludes that Plaintiffs' Motion for Leave to File a Response Out of Time [Document # 31] should be, and the same is, denied. For the same reasons, Defendant's Motion to Strike the Untimely Response [Document #37] is granted. Having made that determination, the Court will now turn to a consideration of Defendant's Motion for Summary Judgment.

III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

   A.   Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). There can be "no genuine issue as to any material fact" if the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case," since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.' " Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)).

When ruling on a summary judgment motion, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). The moving party bears the initial "burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." Catawba Indian Tribe v. South Carolina, 978 F.2d 1334,

10

1339 (4th Cir. 1992) (en banc). Once the moving party has met this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Id. In so doing, the nonmoving party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. Anderson, 477 U.S. at 248–49, 106 S. Ct. at 2510; Catawba Indian Tribe, 978 F.2d at 1339. In other words, the nonmoving party must show "more than . . . some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of its position is insufficient to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); Catawba Indian Tribe, 978 F.2d at 1339.

In addition, "[w]hile courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996). Based on this standard, the Court will consider the claims brought by Plaintiffs for sex discrimination in violation of Title VII.

  B.  Analysis of Sex Discrimination Claims Under McDonnell Douglas Scheme

Regardless of the type of evidence offered, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004). The judicially-created scheme of proof originally established for use in Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), requires that Plaintiffs first prove, by a preponderance of the evidence, a prima facie case of

11

discrimination. Hill, 354 F.3d at 285. To demonstrate a prima facie case of discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) an adverse employment action occurred, (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action, and (4) the job remained open or was filled by a similarly qualified applicant outside of plaintiff's class. See McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824. Once a plaintiff has established her prima facie case, the defendant must respond with evidence that it acted with a legitimate, nondiscriminatory purpose. Id. If the defendant meets this burden of production, the presumption of discrimination created by the prima facie case vanishes, requiring the plaintiff to prove that the defendant's proffered reason is a pretext for discrimination in order to recover. Id. at 804, 93 S. Ct. at 1825.[3]

Here, Plaintiffs cannot establish a prima facie case of discrimination for two reasons. First, Plaintiffs have admitted that they violated the one-hour lunch policy and made offensive, derogatory comments in public regarding their supervisors and managers. Thus, the Plaintiffs were not meeting their employer's legitimate expectations. In addition, all of their positions were filled by other

---

[3]In light of Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), Plaintiffs are no longer required to show pretext *plus* some additional evidence of discrimination. Id. at 148, 120 S. Ct. at 2109. In other words, the Court may infer the ultimate fact of discrimination merely from the falsity of Defendant's proffered explanation. Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000). In addition, under the Supreme Court's holding in Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003), Plaintiffs may instead offer evidence to support a finding that Defendant's reason, "while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (citing Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)). However, in the present case, Plaintiffs have failed to show that Defendant's proffered reason was false or that Plaintiffs' gender was a 'motivating factor' in the decision.

females, and thus Plaintiffs have not shown that the positions were filled by individuals outside Plaintiffs' protected class. Cf. Brown v. McLean, 159 F.3d 898, 905-06 (4th Cir. 1998).

Moreover, even if Plaintiffs had established a prima facie case of discrimination, Defendant has presented a legitimate, non-discriminatory reason for terminating Plaintiffs based on Plaintiffs' abuse of the one-hour lunch policy and Plaintiffs' conduct and statements during the lunch. Plaintiffs have offered no evidence or contentions to show that the reasons offered by Defendant were not the "real reasons" for their termination. In fact, Plaintiffs do not dispute that they were terminated for their conduct at the lunch. Therefore, the Court concludes that Plaintiffs' undisputed conduct at the lunch, specifically their public name-calling and gossiping about their supervisors and managers and their violation of the one-hour lunch policy without approval, was a legitimate, nondiscriminatory reason for their termination.

To the extent that Plaintiffs contend that they were punished more harshly than a male employee would have been for the same violations, Plaintiffs have failed to present any evidence regarding any analogous behavior by a male employee, or any evidence that male employees received a lesser punishment for similar violations. In fact, in their deposition testimony before the Court, Plaintiffs contend that they were discriminated against not because of their gender, but because they were not social friends with the managers and supervisors. See, e.g., Sherrill Depo. Vol. II, p. 70; Hamlin Depo. Vol. I, pp. 107-08, Morris-Belcher Depo. Vol. II, p. 8; McCravey Depo. Vol. II, pp. 9, 11. Plaintiffs contend that those employees who were friends with the managers and supervisors and part of the same social circle were given preferential treatment, regardless of gender. Plaintiffs further contend that they would not have been fired if they had been part of that social group, and that they were treated unfairly because one of the supervisors did not like them. However, the law

13

is clear that giving preferential treatment to friends or social acquaintances does not violate Title VII. See, e.g., Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1385 (4th Cir. 1987) (noting that a "discrimination case is not made out by showing that friendship or politics may have entered into a promotion decision"); Preston v. Wisconsin Health Fund, 397 F.3d 539, 541-42 (7th Cir. 2005) ("Neither in purpose nor in consequence can favoritism resulting from a personal relationship be equated to sex discrimination."). Therefore, even if Plaintiffs' contentions were true, they would not establish a claim for sex discrimination. Based on this evidence, the Court concludes that Plaintiffs have failed to present sufficient evidence to raise even an inference that Defendant's decision to terminate Plaintiffs was based on sex discrimination.[4]

C. Claims of Hostile Work Environment

With respect to Plaintiffs' claims of a "hostile work environment," the evidence properly before the Court provides no support for these claims. A "hostile work environment" claim under Title VII is found "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 1001, 140 L. Ed. 2d 201 (1998). The evidence before the Court does not meet this standard. In this case, none of the Plaintiffs ever raised any sexual harassment complaints while they were employed at the Housing Authority. However, Plaintiffs now apparently assert a claim

---

[4] The Court notes that even if it were to consider the Plaintiffs' untimely Response and Affidavits, Plaintiffs have still failed to present sufficient evidence in support of their claims. Plaintiffs' Affidavits consist primarily of unsupported rumors and innuendos that have nothing whatsoever to do with their terminations on April 23, 2003. Thus, even if the Court considered Plaintiffs' untimely submissions, the Court still concludes that there is no inference or basis for concluding that Plaintiffs' terminations were based on their sex. As a result, any claim that the Housing Authority violated Title VII when it terminated Plaintiffs is properly dismissed.

14

Case 1:04-cv-00255-JAB   Document 42   Filed 06/17/05   Page 14 of 18

that they were subjected to a hostile work environment because they suspected that Ms. McClelland was romantically involved with Mr. Lawrence, and they further speculated that Mr. Lawrence awarded Ms. McClelland multiple promotions because of the suspected relationship. However, Plaintiffs have presented no evidence in support of this allegation. In fact, all promotion decisions were made by Ms. Burnetta Evans, who submitted an Affidavit and evidence to show that she, and not any male supervisors, made the promotion recommendations for Ms. McClelland. Ms. McClelland actually was promoted only once, in November 2002, and was later transferred out of the department and then back into the department at the same salary. According to Ms. Evans, none of the Plaintiffs ever even applied for any posted promotions. Moreover, if Plaintiffs could present evidence in support of this contention, even if true, "[p]referential treatment on the basis of a consensual romantic relationship between a supervisor and an employee . . . is not sex discrimination." Murray v. City of Winston-Salem, 203 F. Supp. 2d 493, 501 (M.D.N.C. 2002); see also Becerra v. Dalton, 94 F.3d 145, 149-50 (4th Cir. 1996).

During their depositions, Plaintiffs made similar additional contentions of a hostile work environment based on various rumors that they had "heard" and perhaps helped to spread, but presented no evidence of discrimination or harassment. At most, the evidence before the Court reveals that Plaintiffs voluntarily attended an off-site birthday lunch for a co-worker at some point in the past, during which the co-worker received a bag filled with gag gifts that were sexual in nature. However, the gifts stayed in the bag, and only employees who chose to look into the bag saw the contents of the gift bag. Such an event clearly does not rise to the level of sex discrimination. Cf. Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996) (holding that sexual innuendos or comments in a group setting would not support a claim of sex discrimination because

15

"Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace"); Cowan v. Prudential Ins. Co., 141 F.3d 751 (7th Cir. 1998). In addition, while the evidence may reveal that Mr. Lawrence gave hugs to both male and female employees and invited both male and female employees out to lunch and dinner, there is no basis to conclude that this conduct in any way involved sexual harassment. Cf. Gupta v. Florida Board of Regents, 212 F.3d 571, 584 (11th Cir. 2000); Pfeil v. Intecom Telecomm., 90 F. Supp. 2d 742, 747-48 (N.D. Tex. 2000). Plaintiffs also contend that they were treated unfairly because one of the female supervisors did not particularly like them. Plaintiffs, however, do not contend that the supervisor's dislike of them was based in any way on Plaintiffs' gender. Of course, such interpersonal conflict does not provide a basis for a sex discrimination claim. See, e.g., Oncale, 523 U.S. at 80, 118 S. Ct. at 1002 ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed ."); Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997) ("We have made clear that only harassment that occurs because of the victim's gender is actionable."). Therefore, the Court concludes that Plaintiffs have failed to present sufficient evidence from which a jury could find a hostile work environment or any other discrimination on the basis of sex.

IV.     CONCLUSION

In summary, for the reasons discussed above, the Court concludes that Plaintiffs have failed to establish excusable neglect to justify their failure to file a Response within the time period to which they previously agreed and which was designated as a "firm" deadline by Court Order. Therefore, Plaintiffs' Motion for Leave to File a Response Out of Time [Document #31] is DENIED, and Defendant's corresponding Motion to Strike the Untimely Response [Document

16

#37] is GRANTED.  Plaintiffs' Proposed Response and Affidavits (submitted as attachments to Document #31) are ordered STRICKEN.

In considering Defendant's Motion for Summary Judgment, the Court concludes that Plaintiffs have failed to establish a prima facie case of discrimination, and have failed to present any evidence that would create an inference that they were terminated on the basis of sex.  In fact, the evidence is undisputed that Plaintiffs were terminated for their misconduct related to their lunch on April 23, 2003.  Plaintiffs have not presented any evidence to show that male employees had been or would have been treated any differently.  Plaintiffs have further failed to present any evidence to establish the existence of a hostile work environment or "sexual harassment" that would constitute discrimination on the basis of sex.

Because there are no genuine issues of material fact, and because there is no evidence from which a reasonable jury could conclude that Plaintiffs were terminated because of their sex, or were subjected to a hostile work environment, the Court concludes that summary judgment is appropriate.  Therefore, Defendant's Motion for Summary Judgment [Document #26] is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

To the extent that Plaintiffs have requested a delay in the trial setting of this case [Document # 34], that request is DENIED AS MOOT.  Finally, to the extent that the Magistrate Judge in his Order imposing sanctions also recommended that certain of Plaintiffs' claims be dismissed for various discovery abuses, that Recommendation [Document #32, 39] is now MOOT.  However, the Court retains jurisdiction in this matter as necessary to allow the Magistrate Judge to enforce his Order imposing sanctions [Document #32].

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 17 day of June, 2005.

_____
United States District Judge